Judge Marshall
delivered the Opinion of the Court.
The defendant in a suit in Chancery has a right to amend his answer, subject to the general rules of practice and the discretion of the Court, as to the time and character of the amendment. (Hughes vs. Phelps, 3 Bibb, 198.) The effect of the amendment, where it is materially variant from the original answer, must depend upon the circumstances of the case. If the first statement is apparently a mistake, or liable to be understood in a sense different from that which was intended, it would be as unjust as it would often be oppressive, to *569 Exclude the explanation of the defendant, and hold him strictly bound by his first statement or admission.
The Court in ex»amining a chancery case, endeavors to get at the facts, and, with that view> Will take the evasions, and eveit. the omissions of a shuffling def’t, most strongly against him. But when the true state of fact is mademanifest by proof, the decree must be accordingly — tho’ the character of tho answer without proof, might justify the Court m going further against the def’t.
A first answer might be understood as admitting, that def’t was accountable to complainant, for a larger sum than that which he states by an amended ans’r, is all that is due; the evidence does not show precisely what the true sum is, nor that it is stated in the amended answer: — held, that the latter should be taken though upon the first answer, taken by itself, defendant might be charg greater than that as the true sum, red with more.
It is apparent from all the proof in the present case, that if the explanatory answer be excluded, and the original answer be strictly construed, as contended for by the complainant, the defendant might be made liable for a much larger sum than it was possible for him to have received for the complainant, in the transaction which is the subject of the suit. The complainant’s own evidence goes strongly to corroborate the truth of the defendant’s explanatory statement. And the original answer itself, if it had remained without any explanation by the defendant, would have been explained by the evidence of the complainant, and might have been understood substantially as it has been explained by the amendment.
However proper it may be, to scrutinize severely an evasive answer, and to construe the admissions, or even the omissions, of a shuffling defendant most strongly against himself; this rule is only useful as a means of coming at the truth, and is applicable, in all its rigid severity, only when the truth lying concealed in the bosom of the defendant, is to be elicited in no other way, but by an appeal to his conscience, and can be subjected to no other tests, but such as his own candor or prevarication may furnish. But the complainant is in no case entitled to more than the truth, .and the’ Chancellor will never adhere to any mere rule of construction when it evidently carries him beyond the truth.
Applying these principles to the present case, we are satisfied, from an examination of the pleadings and proofs in the cause, that the sum of three thousand two hundred and eighty two dollars, admitted by tho defendant, should be taken as the entire sum with which he is to be charged on account of moneys received by him, for the sale of the complainant’s hogs. It is impossible, from any data furnished by the evidence, to ascertain the exact sum unless the statement of the answer be taken for *570 it. And we think that statement should be taken, be* cause every calculation made upon the average data furnished by the evidence, shows a result but slightly variant from it; and as these data are not themselves ex-a ct, the results derived from them cannot be deemed sufficiently certain to countervail the defendant’s oath. Indeed, if the answer be abandoned, and such deductions be made as are authorized by t he evidence, on account of loss in the weight of the hogs, and the necessary expenses of keeping them while in market, it will be found that the sales of that portion of them which was under the immediate control of the defendant, estimating them at the rate of four dollars per hundred pounds, will fall short of the sum which he admits to have been received by him, and we are forced to recur to his admission as the only certain guide upon the 'subject.
We are also satisfied, from the results of these calculations, that the sum admitted by the defendant includes the profits, amounting to about three hundred dollars, which Were made on the purchase and sale of one hundred and ninety three hogs, bought by the defendant, with the money of the complainant; and that it was erroneous to charge this sum, in addition to the three thousand two hundred and eighty two dollars, admitted in the answer. We think too, that, although the first answer of the defendant is somewhat inconsistent with itself, a fair construction of it will lead to the conclusion, that he intended to be understood as including the profits of this transaction in the aggregate of receipts stated by him. Be this as it may, his amendment states •explicitly, that the net proceeds of all sales which remained in his hands, after deducting such expenses as he had to pay, amounted to three thousand two hundred and eighty two dollars; and the proof shows, that including this item of three hundred dollars, it must have been about that sum. The item of six hundred dollars, arising from the sale of a portion of the hogs which were not under the peculiar charge of the defendant while in market, was, in our opinion, properly rejected. The evidence on the subject does not authorize the infer *571 ence, that i,t was retained by him, and it is not mentioned in the pleadings. '
The Circuit Court, in adjusting the account between the parties, improperly allowed eighty dollars, as a compensation to the defendant, for his services, instead of sixty dollars, as admitted by the complainant; there was no proof, either that his services were worth eighty dollars, or that the complainant had agreed to pay him that amount. The other credits allowed by the Circuit Court, were undisputed; and the credits which were disallowed,, were properly rejected, because there was good reason to believe that they were included in the receipt of one-thousand and seventy nine dollars fifty cents, which was allowed. With the exception of the sum of three hundred dollars, improperly charged to the defendant,, and twenty dollars improperly credited to him, we think the account was properly adjusted by the decree. But as that adjustment showed a balance of two hundred and forty one dollars and fifteen cents, in favor of the. complainant, which was decreed against the defendant,, it is obvious that a correction of the two items above specified, will change the result, and exhibit a balance,of thirty eight dollars eighty five cents, in favor of the defendant. For this balance, a decree should have been, rendered in his favor, upon his cross bill;. and the bill of the complainant Herndon, and the cross bill of Robinson should have been dismissed with costs.
Upon the defendant’s appeal,, therefore, the decree is-reversed, with costs, and the cause remanded with directions to dismiss the bill of Herndon, and the cross, bill of Robinson, with costs, and to render a decree in favor of McWilliams, upon his cross bill, for thirty eight dollars eighty five cents, with costs.
The cross writ of error of the complainant, must be affirmed, with costs.